2023 SEP -8  PM 1:55

CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____

JUDGE KATHLEEN CARDONE

EP23CV0339

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
### EL PASO DIVISION

|  |  |
|---|---|
| PAMELA ENRIQUEZ, | § |
| | § |
| Plaintiff, | § |
| | § |
| v. | § |
| | § |
| INTEGRITY ADMIN GROUP, INC., a Delaware | § |
| Corporation | § |
| | § |
| Defendant. | § |
| | § |

## Preliminary Statement

1.      Telemarketing calls are intrusive. A great many people object to these calls, which interfere with their lives, tie up their phone lines, and cause confusion and disruption on phone records. Faced with growing public criticism of abusive telephone marketing practices, Congress enacted the Telephone Consumer Protection Act of 1991. Pub. L. No. 102-243, 105 Stat. 2394 (1991) (codified at 47 U.S.C. § 227). As Congress explained, the law was a response to Americans 'outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers' id. § 2(6), and sought to strike a balance between '[i]ndividuals' privacy rights, public safety interests, and commercial freedoms' id § 2(9).

2.      "The law opted for a consumer-driven process that would allow objecting individuals to prevent unwanted calls to their homes. The result of the telemarketing regulations was the national Do-Not-Call registry. See 47 C.F.R. § 64.1200(c)(2). Within the federal government's web of indecipherable acronyms and by7.8Il.tine programs, the Do-Not-Call registry stands out as a model of clarity. It means what it says. If a person wishes to no longer receive telephone solicitations, he can add his number to the list. The TCPA then restricts the telephone

1

solicitations that can be made to that number. See id; 16 C.F.R. § 310.4(b)(iii)(B) ('It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to ... initiat[e] any outbound telephone call to a person when ... [t]hat person's telephone number is on the "do-not-call" registry, maintained by the Commission.') ... Private suits can seek either monetary or injunctive relief. Id ... This private cause of action is a straightforward provision designed to achieve a straightforward result. Congress enacted the law to protect against invasions of privacy that were harming people. The law empowers each person to protect his own personal rights. Violations of the law are clear, as is the remedy. Put simply, the TCPA affords relief to those persons who, despite efforts to avoid it, have suffered an intrusion upon their domestic peace." Krakauer v. Dish Network, L.L.C., 925 F.3d 643, 649-50 (4th Cir. 2019).

3.      The Plaintiff Pamela Enriquez alleges that she received unsolicited telemarketing calls without her prior express consent on behalf of Defendant Integrity Admin Group, Inc. and that such calls were made to her number listed on the National Do Not Call Registry, a separate violation of the TCPA.

## Parties

4.      Plaintiff, Pamela Enriquez ("Plaintiff") resides in this District.

5.      Defendant Integrity Admin Group, Inc. ("Integrity") is a Delaware corporation with its principal place of business at 2973 Harbor Blvd, Suite 240, Costa Mesa, CA 92626 and is foreign corporation in Texas and can be served via its registered agent Corporation Service Company d/b/a CSC-Lawyers Inco, 211 E. 7th Street, Suite 620, Austin, TX 78701.

## Jurisdiction & Venue

6. ·    Jurisdiction. This Court has federal-question subject matter jurisdiction over Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. *Mims v. Arrow*

2

*Fin. Servs., LLC*, 565 U.S. 368, 372 (2012). Defendant's telemarketing robocalls to Plaintiff; adds little complexity to the case.

7.      Personal Jurisdiction. This Court has general personal jurisdiction over the Defendant because they have repeatedly authorized their agents to place robocalls on their behalf to Texas residents, and derive revenue from Texas residents, and they sell goods and services to Texas residents, including the Plaintiff.

8.      Venue. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)-(2) because a substantial part of the events giving rise to the claims—the calls and sale of goods and services directed at Texas residents, including the Plaintiff—occurred in this District and because the Plaintiff resides in this District. Residing in the Western District of Texas when he received a substantial if not every single solicitation call from Defendant that are the subject matter of this lawsuit.

9.      This Court has venue over the Defendant because the calls at issue were sent by the Defendant to the Plaintiff, a Texas resident.

## TCPA Background

10.     In 1991, Congress enacted the TCPA to restrict the use of sophisticated telemarketing equipment that could target millions of consumers *en masse*. Congress found that these calls were not only a nuisance and an invasion of privacy to consumers specifically but were also a threat to interstate commerce generally. *See* S. Rep. No. 102-178, at 2-3 (1991), as reprinted in 1991 U.S.C.C.A.N. 1968, 1969-71.

11.     The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number

3

assigned to a … cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

12.     The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States, or is exempted by rule or order" of the Federal Communication Commission ("FCC"). 47 U.S.C. § 227(b)(1)(B).

13.     The TCPA provides a private cause of action to persons who receive calls in violation of § 227(b). 47 U.S.C. § 227(b)(3).

14.     Separately, the TCPA bans telemarketing calls without a do-not-call policy available upon demand. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(d)(1).[1]

15.     The TCPA provides a private cause of action to persons who receive calls in violation of § 227(c) or a regulation promulgated thereunder. 47 U.S.C. § 227(c)(5).

16.     According to findings of the FCC, the agency vested by Congress with authority to issue regulations implementing the TCPA, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls and can be costly and inconvenient.

17.     The FCC also recognizes that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

18.     The FCC requires "prior express written consent" for all autodialed or prerecorded telemarketing robocalls to wireless numbers and residential lines.  In particular:[A] consumer's

---

[1] *See* Code of Federal Regulations, Title 47, Parts 40 to 60, at 425 (2017) (codifying a June 26, 2003 FCC order).

4

written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received clear and conspicuous disclosure of the consequences of providing the requested consent, *i.e.*, that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written agreement must be obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.

19.     *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote and internal quotation marks omitted). FCC regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

20.     The FCC confirmed this principle in 2013, when it explained that "a seller ... may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In the Matter of the Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6574 ¶ 1 (2013).

21.     Under the TCPA, a text message is a call. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 – 52 (9th Cir. 2009).

22.     A corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. *E.g.*, *Jackson IntegrityCatering, Inc. v. Beason*, Case No. 10-10010, 2013 U.S. Dist. LEXIS 159985, at \*10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA where they had direct, personal participation in or personally authorized the conduct found to have violated the statute." (internal

quotation marks omitted)); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415 – 16 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

**Factual Allegations**

23.    Plaintiff, Pamela Enriquez, resides in this District.

24.    Plaintiff is a "person" as defined by 47 U.S.C. § 153(39).

25.    Defendant Integrity is the administrator of vehicle service contracts ("VSC's".)

26.    To sell its services, Defendant Integrity relies on telemarketing.

27.    Defendant Integrity hires direct marketers to sell Defendant Integrity's VSC's as mentioned on Defendant Integrity's website https://www.integrityadmingroup.com/direct-marketers.

28.    One of Defendant Integrity's direct marketers is a company that goes by the name of Vehicle Service Dept ("VSD".)

29.    VSD is an unknown entity at this time however will be revealed during discovery.

30.    Defendant Integrity gives a commission fee to Vehicle Service Dept for every VSC they sell for Defendant Integrity.

31.    Plaintiff successfully registered her personal telephone number XXX-XXX-8590 on the National Do Not Call Registry since June 15, 2023.

32.    Plaintiff's personal telephone number, 8590 is registered to a cellular telephone service.

33.    Plaintiff's personal telephone number, 8590 is not primarily used for business purposes and uses this telephone number for personal calls.

34.    Despite this, Plaintiff received at least three unauthorized telemarketing calls from VSD soliciting vehicle service contracts on behalf of Defendant Integrity from July 26, 2023, to

August 11, 2023.

35.     The first call Plaintiff received from VSD was on July 26, 2023, at 12:46 PM from phone number (254) 467-7928.

36.     The second call Plaintiff received from VSD was on July 27, 2023, at 9:27 AM from phone number (432) 274-5860.

37.     The third call Plaintiff received from VSD was on August 11, 2023, at 5:09 PM from phone number (915) 706-8590.

38.     VSD spoofed the Caller ID on each alleged call made to Plaintiff.

39.     On each of the alleged calls Plaintiff answered from VSD followed the same script, that inquired about Plaintiff's vehicle warranty coverage.

40.     On each of the alleged calls the representatives from VSD failed to properly identify themselves and who they are calling on behalf of.

41.     Plaintiff never requested information regarding extended warranty on her vehicle.

42.     On the third alleged call Plaintiff engaged in the call with a representative named Sarah from VSD.

43.     Plaintiff had no need for a VSC however in order to identify who was behind the alleged calls advised Sarah she was interested.

44.     Sarah collected Plaintiff's vehicle's information including the make, model, year, mileage and solicited Plaintiff or a VSC on behalf of Defendant Integrity.

45.     Sarah transferred Plaintiff to another representative from VSC named Jesus who confirmed Plaintiff's information and solicited Plaintiff for a VSC on behalf of Defendant Integrity.

7

46.     Defendant Integrity provided VSD with telephone numbers from thousands of consumers that own vehicles that are either past the vehicles factory warranty or about to expire.

47.     Defendant Integrity ratifies and authorizes VSD to call every phone number on the calling list Defendant Integrity provided without the called party's consent and/or even if the called party's phone number is registered on the National Do-Not-Call registry.

48.     Plaintiff received a VSC that lists VSD as the seller and Defendant Integrity as the administrator.

49.     The address listed in the VSC for VSD is 6789 Quail Hill Pkwy, Suite 722, Irvine, CA 92603.

50.     Plaintiff searched the address for VSD and found it is not registered to a company "Vehicle Service Dept."

51.     Defendant Integrity employs outrageous, aggressive, and illegal sales techniques that violate multiple federal laws and state consumer statutes.

52.     Defendant Integrity has been sued in the past for violating the TCPA and Texas Business and Commerce Code 302.101.

53.     Defendant Integrity violates the TCPA and Texas Business and Commerce Code 302.101 knowingly and willfully for their financial gain.

54.     Defendant Integrity does not have a solicitation registration certificate on file with the Texas Secretary of State as required to make telephone solicitations to Texas residents. Plaintiff is a Texas resident.

55.     The https://direct.sos.state.tx.us/telephone/telephonesearch.asp site ("Texas Registration Database") does not contain Defendant Integrity's registration.

56.     Defendant Integrity does not qualify for an exemption under § 302.053.

57.    The alleged calls constitute "calls" under the TCPA that were not made for emergency purposes.

58.    Each and every call was placed while knowingly ignoring the national do-not-call registry.

59.    Each and every call was placed without training their representatives on the use of any internal do-not-call policy.

60.    Upon information and belief, Defendant Integrity did not train VSD who engage in telemarketing on the existence and use of Defendant Integrity's internal do not call policy as they failed to recognize Plaintiff's personal cell phone 8590 is registered on the National Do-Not-Call Registry.

61.    Plaintiff has limited data storage capacity on his cellular telephone. Incoming telemarketing calls consumed part of this capacity.

## Defendant Integrity's Liability for VSD's Conduct

62.    For more than twenty-five years, the FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." In re Rules & Regulations Implementing the TCPA, CC Docket No. 92-90, Memorandum Opinion and Order, 10 FCC Rcd 12391, 12397 (¶ 13) (1995). Case 5:23-cv-00009-BO-KS.

63.    In its January 4, 2008 ruling, the FCC likewise held that a company on whose behalf a telephone call is made bears the responsibility for any violations. Id. (specifically recognizing "on behalf of" liability in the context of an autodialed or prerecorded message call sent to a consumer by a third party on another entity's behalf under 47 U.S.C. § 227(b)).

64.     In fact, the Federal Communication Commission has instructed that sellers such as Safe

Streets may not avoid liability by outsourcing telemarketing to third parties, such as Safeguard:

[A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to

unsupervised third parties would leave consumers in many cases without an effective remedy for

telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof,

unidentifiable, or located outside the United States, as is often the case. Even where third-party

telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the

telemarketer that physically places the call would make enforcement in many cases substantially

more expensive and less efficient, since consumers (or law enforcement agencies) would be

required to sue each marketer separately in order to obtain effective relief. As the FTC noted,

because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is

unlikely to make a substantive difference for consumer privacy." May 2013 FCC Ruling, 28

FCC Rcd at 6588 (¶ 37) (internal citations omitted).

65.     On May 9, 2013, the FCC released a Declaratory Ruling holding that a corporation or

other entity that contracts out its telephone marketing "may be held vicariously liable under

federal common law principles of agency for violations of either section 227(b) or section 227(c)

that are committed by third-party telemarketers."

66.     Defendant Integrity is also liable for VSD's telemarketing calls, as it explicitly hired

VSD to bring in new customers and knows it does so through illegal telemarketing.

67.     Defendant Integrity knew (or reasonably should have known) that VSD was violating the

TCPA on its behalf and failed to take effective steps within its power to force VSD to cease that

conduct.

68.     Any reasonable seller that accepts telemarketing call leads from lead generators would,

10

and indeed must, investigate to ensure that those calls were made in compliance with TCPA rules and regulations.

69.     Indeed, Defendant Integrity has previously been sued for the telemarketing conduct of its direct marketers.

70.     Finally, the May 2013 FCC Ruling states that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." Id. at 6592-593 (¶ 46). Evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." Id. at 6593 (¶ 46).

## Injury, Harm, Damages, and Actual Damages as a result of the calls

71.     Defendant's calls harmed the Plaintiff by causing the very harm that Congress sought to prevent—a "nuisance and invasion of privacy."

72.     Defendant's calls harmed the Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone.

73.     Defendant's calls harmed the Plaintiff by intruding upon Plaintiff's seclusion.

74.     Plaintiff has been harmed, injured, and damaged by the calls including, but not limited to: reduced device storage, reduced data plan usage, anger, frustration, invasion of privacy, and more frequent charging of his cell phone.


## The Plaintiff's cell phone is a residential number registered with T-Mobile

75.     The alleged calls were made to Plaintiff's personal phone ending ion 8590 that she primarily uses for personal use. Plaintiff's personal phone is not used for any business purposes

11

and is registered in her name.

## The Texas Business and Commerce Code § 305.053

76.    The Texas Business and Commerce code has an analogous portion that is related to the
TCPA and was violated in this case.

77.    The Plaintiff may seek damages under this Texas law for violations of 47 USC 227 or
subchapter A and seek $500 in statutory damages or $1500 for willful or knowing damages.

## Violations of the Texas Business and Commerce Code § 302.101

78.    Defendant Integrity initiated the phone calls alleged herein and is a "seller" under the
Texas Business and Commerce Code because it makes telephone solicitation on its own behalf
through salespersons and authorized third parties such as the anonymous telemarketers that
called Plaintiff in this case.

79.    Under TCBB 302.302 "a person makes a telephone solicitation if the person effects or
attempts to effect a telephone solicitation." Telephone calls initiated by VSD are attributable to
both them individually and to Defendant Integrity.

80.    The actions of the Defendant Integrity violated the Texas Business and Commerce Code
302.101 by authorizing VSD to place solicitation phone calls to a Texas resident on behalf of
Defendant Integrity without having a registration certificate and bond on file with the Texas
Secretary of State.

81.    Texas Business and Commerce Code § 302.101 provides a private right of action. A
violation of Chapter 302 "is a false, misleading, or deceptive act or practice under Subchapter E,
Chapter 17" and is enforceable as such: "A public or private right or remedy prescribed by
Subchapter E, Chapter 17, may be used to enforce [Chapter 302." Tex. Bus. & Com. Code §

12

302.303.

82.     The use or employment by any person of a false, misleading, or deceptive act or practice"

causes "economic damages or damages for mental anguish." Tex. Bus. & Com. Code § 17.50.

83.     Texas Business and Commerce Code §302.101 states that a person (1) "may not make a

telephone solicitation" (a) "from a location in [Texas]" or (b) "to a purchaser located in [Texas],"

(2) "unless the [person] holds a registration certificate for the business location from which the

telephone solicitation is made." Tex. Bus. & Com. Code § 302.101(a).

84.     Under Texas Business and Commerce Code § 302.302 Plaintiff is entitled to seek

damages of up to $5000 per violation of §302.101.

## Causes of Action

### Count One:

### (Violation of the TCPA "Sales Call/DNC" Prohibition, 47 U.S.C. 227(c), and 47 C.F.R. § 64.1200(C))

85.     Plaintiff realleges and incorporates by reference each and every allegation set forth in the

preceding paragraphs.

86.     Defendant and/or their direct marketer called Plaintiff's private residential telephone

number which was successfully registered on the National Do-Not-Call Registry more than

thirty-one (31) days prior to the calls for the purposes of commercial solicitation, in violation of

47 U.S.C. § 227(c)(3)(F), and 47 C.F.R. § 64.1200(c)(2).

87.     Plaintiff was statutorily damaged at least three (3) times under 47 U.S.C. § 227(c)(3)(F)

by the Defendant by the telemarketing calls described above, in the amount of $500.00 per call.

13

88.     Plaintiff was further statutorily damaged because Defendant willfully and/ or knowingly violated this subsection of the TCPA. Plaintiff requests that the court treble the damage amount as permitted under U.S.C. § 227(c)(5) for each and every willful and/or knowing violation.

89.     Plaintiff is entitled to an award up to $1,500 in damages for each knowing or willful violation of 47 U.S.C. § 227(c)(3)(F).

<h2 style="text-align:center">Count Two:</h2>

<strong>(Violations of The Texas Business and Commerce Code 305.053)</strong>

90.     Plaintiff incorporates the foregoing allegations as if set forth herein.

91.     The foregoing acts and omissions of Defendant constitute multiple violations of the **Texas Business and Commerce Code 305.053**, by making non-emergency telemarketing calls to Plaintiff's cellular telephone number without her prior express written consent in violation of 47 U.S.C. § 227 et seq.

92.     Plaintiff seeks for herself an award of at least $500.00 in damages for each such violation. **Texas Business and Commerce Code 305.053(b).**

93.     Plaintiff seeks for herself an award of up to $1,500.00 in damages for each such knowing or willful violation. **Texas Business and Commerce Code 305.053**(c).

<h2 style="text-align:center">Count Three</h2>

<strong>(Violations of Texas Business and Commerce Code 302.101)</strong><br><strong>Failure to obtain a Telephone Solicitation Registration Certificate</strong>

94.     Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

14

89.   Defendant and/or their direct marketer made at least three (3) solicitation sales calls to Plaintiff without having a valid telephone solicitation as required under Tex. Bus. Com. Code 302.101.

90.   As a result of Defendant and/or their direct marketer's violations of Tex. Bus. and Com. Code 302.101 Plaintiff may seek damages of up to $5,000 for each violation.  Tex. Bus. and Com. Code 302.302(a).

91.   As a result of Defendant and/or their direct marketer violations of Tex. Bus. and Com. Code 302.101 Plaintiff may seek all reasonable costs of prosecuting this action, including court costs, deposition costs, and witness fees.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Pamela Enriquez prays for judgment against the Defendant jointly and severally as follows:

A.      Leave to amend this Complaint to name additional DOESs as they are identified and to conform to the evidence presented at trial;

B.      A declaration that actions complained of herein by Defendant violates the TCPA and Texas state law;

C.      An injunction enjoining Defendant and their affiliates and agents from engaging in the unlawful conduct set forth herein;

D.      An award of $1500 per call in statutory damages arising from the TCPA §227(c) intentional violations jointly and severally against the corporation for 3 calls.

E.      An award of $1,500 in statutory damages arising from violations of the Texas Business and Commerce code 305.053 intentional violations jointly and severally against the corporation for 3 calls.

15

F.    An award of $5,000 in statutory damages arising from violations of the Texas Business and Commerce code 302.101 intentional violations jointly and severally against the corporation for 3 calls.

G.    An award to Ms. Enriquez of damages, as allowed by law under the TCPA and Texas state law;

H.    An award to Ms. Enriquez of interest, costs, and attorneys' fees, as allowed by law and equity.

I.    Such further relief as the Court deems necessary, just, and proper.

Dated: September 8, 2023

Pamela Enriquez
*Plaintiff, Pro Se*
2028 Rogelio Ave
El Paso, TX 79936
Phone: (915) 706-8590
Pamelaenriquezrn56@gmail.com